<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CORNELL CAPITAL PARTNERS, L.P.<br><br>                    Plaintiff,<br><br>vs.<br><br>EAGLE BROADBAND, INC., H. DEAN<br>CUBLEY, RICHARD R. ROYALL, A.L.<br>CLIFFORD, GLENN ALLAN GOERKE, AND<br>NANCY L. MAIN<br><br>                    Defendants. | Civ. No. 03-1860(WGB)<br><br>**M E M O R A N D U M<br>O P I N I O N** |

<u>APPEARANCES:</u>

Eric Tunis, Esq.
Ian S. Marx, Esq.
GREENBERG TRAURIG, LLP
200 Campus Drive
P.O. Box 677
Florham Park, New Jersey 07932

     Attorneys for Plaintiffs

David A. Kotler, Esq.
Regan H. Crotty, Esq.
DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218, Princeton, NJ 08543-5218

     Attorneys for Defendants

**BASSLER, SENIOR DISTRICT JUDGE:**

     Cornell Capital Partners L.P. ("Cornell") is a New Jersey-
based private equity investment firm that specializes in
providing financing to publicly-traded companies.  Cornell
entered into several financing agreements with Eagle Broadband

Inc. ("Eagle"), a Texas-based, publicly-traded company.  First, the parties executed a written agreement ("Equity Line of Credit Agreement" or "ELOC Agreement") setting up a $20 million equity line of credit for Eagle.  The ELOC required Eagle to pay Cornell a $790,000 commitment fee.  Several months later, the parties entered into a series of agreements ("Debenture Agreements"), in which Cornell would provide Eagle $3 million in financing in exchange for a debenture convertible to Eagle common stock ("Convertible Debenture").  Cornell was to provide $2.5 million in cash and the remaining $500,000 in the form of a debenture of another publicly-traded company, Celerity Systems, Inc.

Cornell's Second Amended Complaint ("Complaint" or "Compl.") alleges: (Count 1) that Eagle[1] breached the Equity Line of Credit Agreement by failing to pay the commitment fee, (Count 2) that Eagle breached the Debenture Agreements by not registering its shares of stock with the Securities and Exchange Commission ("SEC"), (Count 3) common law fraud, (Count 4 and 5) securities fraud in violation of § 10(b) and rule 10(b)-5, (Count 6 and 7) violations of the New Jersey Securities Act, and (Count 8)

---

[1]Cornell also sued five individual defendants: H. Dean Cubley, Richard R. Royall, A.L. Clifford, Glenn Allan Goerke and Nancy L. Main who were employees of Eagle during the relevant period of time at issue here.  Cubley was Eagle's Chief Executive Officer and Chairman of the Board, Royall was the Chief Financial Officer and Clifford, Goerke and Main were members of Eagle's Audit Committee.  The Court will refer to all Defendants as Eagle.

negligent misrepresentation.  In Counts 9 and 10 Cornell seeks a declaratory judgment and attorney's fees.  Eagle counterclaimed for breach of contract (Counterclaim 1), unjust enrichment (Counterclaim 2), fraudulent inducement (Counterclaim 3) and conversion (Counterclaim 4).  Eagle claims that Cornell breached the Debenture Agreements by accelerating conversion of Eagle's debt into common stock without complying with the conversion limitations set forth in the Agreement and failed to give full consideration by not providing the original Celerity secured debenture or securities purchase agreement.

Cornell now moves for partial summary judgment seeking judgment on Count One of the Complaint and on all four of Eagle's counterclaims.  Eagle also moves for partial summary judgment on its breach of contract counterclaim and for summary judgment on all claims in Cornell's Complaint based on the lack of evidence of damages.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Venue also is proper pursuant to 28 U.S.C. § 1391.

For the following reasons, Cornell's motion for partial summary judgment on Count One of its Complaint and on all four of Eagle's counterclaims is **granted** and Eagle's motion for partial summary judgment based on its breach of contract counterclaim is

**denied**.  Eagle's summary judgment motion based on the lack of evidence of damages is **denied** on Counts One, Two, Nine and Ten of Cornell's Complaint, but is **granted** on Counts Three, Four, Five, Six, Seven and Eight.

I.   **BACKGROUND**

   **A.  The ELOC Agreement**

On July 16, 2002, Cornell and Eagle executed the ELOC Agreement whereby Eagle agreed to issue to Cornell, and Cornell agreed to purchase, up to $20 million of Eagle's stock.  The ELOC Agreement required Eagle to pay a $790,000 commitment fee payable in Eagle stock in two equal installments: $395,000 at closing and $395,000 one year from the date of the ELOC Agreement.  Certification of Mark A. Angelo ("Angelo Cert.") Ex. B, § 12.4(b)(ii).  When the ELOC Agreement was originally drafted, it stated that the "[i]nvestor's shares shall be deemed fully earned <u>upon delivery to the investor</u>." <u>Id.</u> § 12.4(b)(iii)(emphasis added).  The current Agreement has the words "upon delivery to the investor" marked out and the section now reads: "Investor's shares shall be deemed fully earned <u>on [d]ate hereof</u>."  <u>Id.</u> (emphasis added)[2]

It is undisputed that Eagle paid Cornell $197,500, only one

_____

   [2] The parties dispute whether the change of the wording was made prior to or after the execution of the agreement.

4

half of the first payment of the commitment fee, and that Eagle never drew on the equity line of credit.

**B. Debenture Agreements**

_____To formalize Cornell's purchase of the Eagle convertible debenture and, therefore, put the long-term financing into place, Eagle and Cornell entered into several agreements: 1) the Securities Purchase Agreement, 2) the Investor Registration Rights Agreement and 3) the Irrevocable Transfer Agent Instructions all dated October 2, 2002.  The parties further executed the 5% Convertible Debenture Agreement due October 2005.

Under the Securities Purchase Agreement, Cornell agreed to purchase, up to $3 million in convertible debentures.  Angelo Cert., Ex. C.  Eagle then had to fulfill its obligation under the Investor Registration Rights Agreement by preparing and filing a registration statement with the SEC no later than sixty days from the execution date of the Agreement or October 2, 2002.  Angelo Cert., Ex. D, § 2(b).  The Investor Registration Rights Agreement further stated that if the registration statement was not filed by the scheduled filing date, Eagle would pay Cornell liquidated damages according to a stated formula and Cornell was entitled "to effectuate conversions of the outstanding Convertible Debenture" from the 15,000,000 authorized and unissued shares of Eagle common stock.  Id. § 2(d).

The Irrevocable Transfer Agent Instructions provided that

5

Registrar & Transfer Company ("Registrar") would act as Eagle's transfer agent and "reserve at all times fifteen million (15,000,000) shares of [Eagle's] authorized and unissued common stock. . . ." Angelo Cert., Ex. E. Eagle contemporaneously issued a 5% Convertible Debenture to Cornell that was convertible into Eagle stock for a total purchase price of $3 million. Cornell paid Eagle $3 million as consideration for the Debenture, $2.5 million in cash and $500,000 in the form of an assignment of a portion of Cornell's interest in the Celerity Debenture.

Eagle does not dispute that it failed to file a registration statement with the SEC. In response to Eagle's failure to register the shares, Cornell began utilizing the 15,000,000 shares to effectuate conversion of the Debenture. Cornell contacted Registrar, which carried out Cornell's requests by issuing Cornell stock certificates over an eight-month period until the Debenture was redeemed.

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment will be granted only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Whether a fact is material is determined by the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury

6

could return a verdict for the nonmoving party." <u>Healy v. N.Y.</u>
<u>Life Ins. Co.</u>, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988), <u>cert.</u>
<u>denied</u>, 490 U.S. 1098 (1989).

Summary judgment is appropriately used for interpreting a
contract whose terms are considered by opposing parties to be
clear and unambiguous, "even if the parties have divergent views
of what the agreement provided." <u>Paul Revere Protective Life</u>
<u>Ins. Co. v. Weis</u>, 535 F.Supp. 379, 383 (E.D. Pa. 1981).  If,
however, there is any evidence in the record from which a
reasonable inference can be drawn in the nonmovant's favor, a
motion for summary judgment cannot be granted regarding the
meaning of a contract.  <u>Vanguard Telecom., Inc. v. S. New York</u>
<u>Tel. Co.</u>, 722 F.Supp. 1166, 1178 (D.N.J. 1989)(citing <u>Tigg Corp.</u>
<u>v. Dow Corning Corp.</u>, 822 F.2d 358, 363 (3d Cir. 1987)).

## III. DISCUSSION

### A. Count One: Breach of ELOC Agreement

Cornell asserts that it is entitled to the remainder of the
commitment fee that Eagle has failed to pay.  Cornell claims that
the ELOC Agreement unambiguously provided that the commitment fee
was fully earned as of the July 16, 2002 closing.  Eagle contends
that the Court must read § 12.4(b)(iii) of the agreement as
stating that the commitment fee was "fully earned upon delivery
to the investor" because the handwritten language "on date
hereof" was not present at the execution of the agreement.  In

7

response, Cornell maintains that regardless of whether the agreement states "upon delivery to the investor" or "on date hereof," the date upon which the commitment fee is fully earned "is amenable to only one meaning."  Cornell's Reply Memorandum Supporting Partial Summary Judgment Motion ("Cornell Rep. Mem.") at 4.  Cornell advances three arguments to support its position.

First, Cornell argues that the handwritten language, "on date hereof," was included in the agreement at the time of the signing.  It further asserts that the initials of Dean Cubley, Eagle's Chairman of the Board and Chief Executive Officer at the time Eagle and Cornell entered into the ELOC Agreement, is proof of this fact.  Eagle argues that Cubley's initials at the bottom of the page where the changes were made is of no consequence since every page of the agreement was initialed by Cubley. Cubley also testified that the handwritten changes were not there when the agreement was executed and that he would have initialed the changes if they had been there.  Certification of Alice M. Woo ("Woo Cert.") Ex. A; Cubley Dep. at 41:10-13.[3]

Second, Cornell argues that regardless of whether the language was changed or not, the only logical meaning of §

_____

[3]Interestingly, however, Eagle has not provided the Court with a copy of the ELOC Agreement without the handwritten notation that Eagle contends was not present at the signing of the Agreement.  If, in fact, an unedited copy of the Agreement existed, the Court would have expected that Eagle would have brought such a document to the Court's attention.

12.4(b)(iii) is that Cornell "fully earned" the right to possess and dispose of the commitment fee shares when Eagle entered into the ELOC Agreement with Cornell.  Cornell contends that the section cannot be construed to deem, as Eagle suggests, the commitment fee shares "fully earned" only in the event that Eagle drew on the equity line of credit.  Cornell Rep. Mem. at 4; see also Eagle's Memorandum in Opposition to Cornell's Partial Summary Judgment Motion ("Eagle Opp. Mem.") at 22 (stating that "the parties do not dispute that Eagle never made any draws on the equity line").  Cornell noted that there is no indication of that interpretation in the agreement or in any other evidence submitted.  Id.

Third, Cornell maintains that interpreting § 12.4(b)(iii) to mean that Cornell was entitled to the commitment fee shares only upon their delivery is a "commercially impossible result" because Eagle would be allowed to deprive Cornell of the shares simply by refusing to deliver them.  Cornell Rep. Mem. at 5.  The Court is persuaded by Cornell's arguments.

Although Eagle attempts to derive some ambiguity in the ELOC Agreement, the Court finds that there is none.  Whether a contract is unambiguous is a question of law to be decided by the court.  Fitzmaurice v. Van Vlaanderen Mach. Co., 57 N.J. 447, 449 (1971).  In making such a decision, courts are cautioned to "examine the document as a whole" and "not torture the language

of [the agreement] to create ambiguity." <u>Nester v. O'Donnell</u>, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting <u>Stiefel v. Bayly, Martin & Fay, Inc.</u>, 242 N.J. Super. 643, 651 (App. Div. 1990). In other words, courts should not strain to find ambiguity but should, instead, hold parties to the contractual terms to which they agreed. <u>See</u> <u>Schor v. FMS Fin. Corp.</u>, 357 N.J. Super. 185, 191 (App. Div. 2002).

The Agreement unambiguously states that Cornell is entitled to the full $790,000 commitment fee, with half being provided at the signing of the Agreement and the other half being due one year from the signing of the Agreement. Both of those dates have passed. There is absolutely no evidence to support Eagle's position that the parties intended the commitment fee to be fully earned only after Eagle drew on the equity line of credit and therefore, the Court will not provide Eagle with a better contract than it entered into. <u>James v. Federal Ins. Co.</u>, 5 N.J. 21, 24 (1950) (noting that the court may not "make a better contract for the parities than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other"). Furthermore, it is illogical to interpret the Agreement to mean that the fee would be fully earned when Eagle decided to deliver the shares to Cornell.[4]

---

[4]The Court further rejects Eagle's argument that Cornell is only entitled to shares of stock and not monetary damages for Eagle's alleged failure to pay the commitment fee. <u>See</u> <u>Schonfeld</u>

Therefore, the Court will not strain to find an ambiguity where only one logical reading of the Agreement exists, and Cornell's partial summary judgment motion on Count One of its Second Amended Complaint is granted.

**B. Eagle's Counterclaims**

Eagle counterclaimed against Cornell for breach of contract, unjust enrichment and conversion on the basis that Cornell converted debentures into Eagle common stock without complying with the limitations set forth in § 1.03 of the Agreement. Eagle also counterclaimed for breach of contract and fraudulent inducement asserting that Cornell induced Eagle to enter into the Agreement by representing that it would provide Eagle with the original Celerity Debenture and a securities purchase agreement, which Cornell allegedly failed to do. Eagle moves for partial summary judgment on its breach of contract counterclaim. Cornell also moves for summary judgment on all of Eagle's counterclaims.

> 1.  Breach of Contract, Unjust Enrichment,
>     and Conversion

Cornell argues that Eagle's failure to register its shares was an "Event of Default," which allowed Cornell to accelerate conversion under the provisions of the Debenture. Cornell relies upon several sections of the Debenture Agreements to support its

---

v. Hilliard, 218 F.3d 164 (2d Cir. 2000)("when defendant's breach of contract deprives plaintiff of asset, courts look to compensate plaintiff for 'market value' of asset"). Eagle also cites to no case law to support its assertion.

conclusion, including:

- Section 2(d) of the Investor Registration Rights Agreement states that "[i]n the event the Registration Statement is not filed by the Scheduled Filing Deadline . . . the Holder shall be entitled to <u>effectuate conversions</u> of the then outstanding Convertible Debenture from the 15,000,000 authorized and unissued shares of the Company's Common Stock reserved by the Company's transfer agent." (emphasis added).

- Section 1.06 of the Debenture provides that Eagle's "[f]ailure to comply with the obligations pursuant to the Registration Rights Agreement shall entitle [Cornell] to <u>effectuate conversions</u> of the then outstanding Convertible Debenture from the 15,000,000 authorized and unissued shares of [Eagle's] Common Stock. . . ." (emphasis added).

- Section 3.01 of the Debenture entitled the "Holder to accelerated full repayment of all debentures outstanding" in the "Event[] of Default."

Eagle claims that section 1.03 of the Debenture placed limitations as to the timing of the conversion and the amount of debt that Cornell could convert during each conversion event. Section 1.03 of the Debenture states:

The Holder shall not be entitled to convert this Debenture for a period of one hundred eighty (180) days from the date hereof.  After one hundred eighty (180) days form (sic) the date hereof if the Conversion Price is below One Dollar ($1.00) the Holder shall be entitled, at its option, to convert, and sell on the same day up to Fifty Thousand Dollars ($50,0000) every (5) business days. . . ."

Angelo Cert., Ex. F, § 1.03.  Eagle also contends that § 1.03 applied to Cornell even if there was a default.  Eagle Opp. Mem. at 8.  Eagle further maintains that based on § 3.01, Cornell was entitled only to accelerated repayment not accelerated conversion

12

in the event of a default.  Eagle Opp. Mem. at 11.  Cornell

disagrees claiming that § 1.03 only applied in the "normal

course" where no breach of the financing agreement had occurred.

Cornell Memorandum Supporting its Partial Summary Judgment Motion

("Cornell Supp. Mem.") at 7.

As discussed above, the determination of whether a contract

provision is clear or ambiguous is a question of law for the

court to decide "by looking at the contract as a whole in light

of the circumstances present when the contract was entered."

Coker v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983).[5]  "In

construing a written contract, the primary concern of the court

is to ascertain the true intentions of the parties as expressed

in the instrument."  Id. at 393.

In reviewing the Debenture Agreements, the Court finds that

the language in sections 2(d)and 1.06, which support Cornell's

position is clear.  In the event of a default, Cornell was

entitled "to effectuate conversions of the then outstanding

Convertible Debenture from the 15,000,000 authorized and unissued

shares."  Angelo Cert., Ex. F, § 1.06; see also Angelo Cert., Ex.

D., § 2(d).  Section 1.06, following § 1.03, does not contain any

language evidencing the parties' intent to make that section

_____

[5]Unlike the ELOC Agreement, the Debenture contains a choice
of law provision that requires the Debenture to be interpreted
under Texas substantive law.  Although Cornell uses New Jersey
law, no substantial differences in contract interpretation
between the two states appear to exists.

subject to the limitations of § 1.03.

Furthermore, Eagle concedes that a default "allowed Cornell to begin converting Eagle's debt into equity prior to the expiration of the 180 day lock-up period (provided in Section 1.03 of the Debenture)." Eagle Opp. Mem. at 10.  If Eagle agrees that the 180 day lock-up period provided in section 1.03 was trumped by § 1.06, why would the other volume and sales restrictions of § 1.03 not be trumped by § 1.06 as well?  Eagle provides no answer to this question.[6]  Therefore, the Court finds that Cornell had the right to effectuate conversions without regard to the limitations of § 1.03 when Eagle failed to register its shares and therefore, summary judgment is granted in favor of Cornell on Eagle's breach of contract (the portion regarding

---

[6]The Court also is not persuaded by Eagle's argument that under § 3.01, Cornell was only entitled to accelerated repayment and not accelerated conversion.  Eagle's interpretation would render § 2(d) and § 1.06, which provides that "holder shall be entitled to effectuate conversions" meaningless.  Courts must "give effect to all provisions of the contract so that none will be rendered meaningless.  Coker, 650 S.W. 2d at 393.  As Cornell notes, § 3.01 provides the remedy for a panoply of different breaches.  Cornell Memorandum in Opposition to Eagle's Partial Summary Judgment Motion on its Breach of Contract Counterclaim ("Cornell BOC Opp. Mem.") at 4.  But where § 2(d) and § 1.06 provide a more specific remedy regarding the failure to register the shares, which the Court does not find is necessarily contrary to § 3.01, the more specific provision will apply.  See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133-34 (Tex. 1994) (in contract interpretation controlling effect must be given to specific provisions over general provisions).  Additionally, the Court's interpretation of the contract does not render § 1.03 meaningless, because § 1.03 applies in the normal course, where no default has occurred.

Cornell's conversion of debentures into Eagle stock), unjust enrichment and conversion counterclaims.

## 2.  Breach of Contract and Fraudulent Inducement

Eagle further alleges that Cornell breached the Debenture Agreements and fraudulently induced Eagle to enter into the Agreements by claiming that it would provide the original copy of the Celerity Debenture and a securities purchase agreement, which Cornell allegedly never provided.  Eagle also contends that Cornell "failed to grant Eagle a security interest in the Celerity Debenture by listing Eagle as a secured party under UCC-1 to be filed against Celerity."  Eagle Opp. Mem. at 34.  All evidence submitted by the parties, other than the testimony of Defendant Cubley, however, weigh against Eagle's contentions. Based on the Joint Disbursement Instructions for Closing, signed by Cubley, Cornell had complied with all "conditions precedent to the Company's offering of Convertible Debentures."  Angelo Cert., Ex. I.[7]  Discovery has been completed, and Eagle has not presented one letter, facsimile or any document from Eagle to

---

[7]Eagle claims that it was coerced to sign this document because Cornell would not deliver the Celerity Debenture unless the document was signed. Eagle Opp. Mem. at 33.  So in effect, Eagle is claiming that Cornell would not deliver the Celerity Debenture unless Eagle signed a document confirming that Cornell had delivered the Celerity Debenture, which would apparently be one of the conditions precedent to Cornell receiving an Eagle Convertible Debenture.  This assertion is just as nonsensical as many of the other allegations upon which Eagle bases its counterclaims.

Cornell requesting the items or additional consideration Eagle claims it was owed.[8]  In contrast, Cornell has submitted copies of a facsimile dated December 9, 2002 it purportedly sent to Eagle forwarding a copy of the Celerity debenture.  The facsimile stated "[u]pon receipt of original, we will forward same to you."  Additionally, Cornell provided the Court with a letter addressed to Eagle dated December 10, 2002 enclosing a copy of the original Celerity debenture.

Assuming Cornell never actually sent the fax or the letter to Eagle in December 2002, Cubley concedes that Eagle received a faxed copy of the Celerity Debenture in February 2003, only four months (not nine or seven months as Cubley states) after the execution of the Debenture Agreements.  Woo Cert., Ex. A, 120:20-25; see also Certification of Ian Marx ("Marx Cert."), Ex. F, Royall Dep. 62:1-5 ("we received 2 million 5, net of fees and a bond, a convertible bond from a company called Celerity Systems that came in probably, three or four months after the funding of the initial tranche of cash").

The Court first notes that Eagle has provided no evidence that the Agreement even required Eagle to deliver the original Celerity Agreement or a securities purchase agreement other than

---

[8]Pursuant to the Magistrate's Scheduling Order of March 18, 2005, all fact and expert discovery closed on April 1, 2005 (except as to depositions of Eagle's witnesses Alan Hess and William Purcell).

the testimony of Cubley.  Nothing in the express language of the Debenture Agreements supports Eagle's contentions.  Moreover, even if the Debenture Agreements required Cornell to provide those documents, Eagle has submitted no evidence that a specific time period was set for delivery.

The movant has the initial burden of demonstrating the absence of genuine issues of material fact.  This "burden . . . may be discharged by 'showing' that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catreet, 477 U.S. 317, 323 (1986).  Once the movant has satisfied her burden, the non-movant must then establish the existence of each element on which it bears the burden of proof. See J.F. Feeser, Inc. v. Serve a Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990).  A non-moving party with the burden of proof "may not rest[] on the allegations in her pleadings, but rather must present competent evidence from which a jury could reasonably find in favor of her." Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).  The Court finds that Eagle has failed to meet its burden of proving that a material issue of genuine fact exists regarding whether Cornell breached the Debenture Agreements by not providing the Celerity Debenture and securities purchase agreement or failing to list Eagle as a secured party under UCC-1.  Furthermore, no genuine issue of material fact exists regarding whether Cornell fraudulently

17

induced Eagle by representing that it would provide the documents
or list Eagle as a secured party knowing that this representation
was false or recklessly making the representation without any
knowledge of the truth.  Hearthshire Braeswood Plaza Ltd. P'ship
v. Bill Kelly Co., 849 S.W. 2d 380, 384 (Tex. App. 14th Dist.
1993).  Therefore, the Court also enters judgment in favor of
Cornell on Eagle's breach of contract (the portion regarding
Cornell's performance of duties) and fraudulent inducement
counterclaims.

### C. Lack of Evidence of Damages

Eagle contends that summary judgment should be granted on
Cornell's Second Amended Complaint because Cornell "has failed to
assign a value to or quantify the dollar amount of damages it has
allegedly suffered."  Eagle's Reply Memorandum Supporting Summary
Judgment Motion based on Lack of Damages("Eagle Rep. LOD Mem.")
at 1.  Cornell has explicitly provided the amount of damages it
is entitled to in Counts One and Two of its Complaint, its breach
of contract claims, which is supported by the financing
agreements entered into by the parties.  Cornell claims that
"$595,500 (sic) [of the commitment fee] remains due."[9]  Cornell's
Memorandum in Opposition to Eagle's Summary Judgment Motion based
on Lack of Damages ("Cornell LOD Opp. Mem.") at 2; see also

---

[9]The amount should be $592,500, which is the remainder of
the first payment, $197,500 plus the second payment $395,000.

Angelo Cert., Ex. B, § 12.4(b)(ii).

Likewise, Cornell provided a formula to compute the amount
of liquidated damages that Eagle is allegedly responsible for
paying for breaching the Debenture Agreements.  Cornell LOD Opp.
Mem. at 2; see also Angelo Cert. Ex. D, § 2(d).  Cornell's
failure to provide the specific value of the damages is not fatal
to its claim.  See TKR Cable Co. v. Cable City Corp., No. 96-CV-
2877, 1998 WL 34028782, at *1 (D.N.J. Jan. 27, 1998)(summary
judgment not warranted merely because damages were not "sum
certain").[10]

Cornell has neglected, however, to show what damages are
being sought in Counts Three through Eight.  Cornell concedes
that it has been able to mitigate most of the damages it may have
incurred by Eagle's misrepresentation of its financial condition,
which is the basis of Cornell's fraud and negligent
misrepresentation claims.  Cornell LOD Opp. Mem. at 3.  In fact,
Cornell has enjoyed a gain of over $9 million, three times its
investment.  Woo Cert. Ex. J; Angelo Dep. at 13:22-14:1.  Cornell
contends, however, that it should be entitled to recover the
"additional consideration for its investment" that it would have
been in a position to demand had it known the true condition of

_____

[10]Cornell seeks a declaratory judgment in Count Nine of the
Complaint and attorney's fees in Count 10.  At this juncture of
the case, there is no lack of evidence of damages.

Eagle's financial status.  Cornell LOD Opp. Mem. at 3.  Cornell's
request for a "commensurate increase in the consideration it
received," however, is so vague and indefinite that any award
would be mere speculation.

The Third Circuit has held that "a plaintiff who cannot
prove out of pocket damages may prove 'loss of a possible profit
or benefit, [defined as] an addition to the value of one's
investment, unless the loss is wholly speculative'" <u>See</u> <u>Tse v.
Ventana Medical Systems, Inc.</u>, 297 F.3d 210, 219 (3d Cir.
2002)(citing <u>Gould v. American-Hawaiian S.S. Co.</u>, 535 F.2d 761,
781 (3d Cir. 1976)); <u>see also</u> <u>Chemipal Ltd. v. Slim-Fast
Nutritional Foods Int'l, Inc.</u>, 350 F. Supp. 2d 582, 597 (D. Del.
2004)("Speculative damages are not recoverable").  The Court,
therefore, grants Eagle's motion for summary judgment for lack of
evidence of damages on Counts Three through Eight of Cornell's
Complaint finding that the need to hypothesize about the amount
of consideration Cornell would have requested for its investment
had it known the true financial situation of Eagle is wholly
speculative.[11]

------

[11]The Court's determination is further supported by Cornell's
admission that when drafting the agreement it insisted "that the
deal be structured in a way that would minimize its risk to the
extent possible."  Cornell Supp. Mem. at 1.  The Court cannot now
be asked to make such speculative determinations such as
evaluating the difference between the risk Cornell took into
consideration then and the amount of actual risk which existed
based on Eagle's true financial condition.  Further, Cornell has
not provided any evidence regarding these damages and has,

## IV. CONCLUSION

For the reasons stated in this Opinion, this Court **grants** Cornell's motion for partial summary judgment on Count One of its Second Amended Complaint and on all four of Eagle's counterclaims in their entirety.  The Court **denies** Eagle's motion for partial summary judgment on its breach of contract counterclaim (Counterclaim 1).  The Court **denies** Eagle's motion for summary judgment based on the lack of evidence of damages on Counts One, Two, Nine and Ten of Plaintiff's Second Amended Complaint. Additionally, the Court **grants** Eagle's motion for summary judgment based on the lack of evidence of damages on Counts Three, Four, Five, Six, Seven and Eight of Plaintiff's Second Amended Complaint.

An appropriate Order accompanies this Opinion.


                              /s/ William G. Bassler

                         WILLIAM G. BASSLER, U.S.S.D.J.

Dated: March 28, 2006

---

therefore, failed to meet its burden.  Celotex Corp., 477 U.S. at 323-25 (Although the moving party has the initial burden of establishing the absence of evidence necessary to the non-moving party's case, once it has done so, the burden shifts to the non-moving party to provide evidence to support each element of the party's claim).